| UNITED STATES DISTRICT COURT | EASTERN DISTRICT OF TEXAS |
|---|---|

MARK HILTON, §
§
    Plaintiff, §
§
versus § CIVIL ACTION NO. 1:15-CV-93
§
KIRBY INLAND MARINE, LP, TUBAL- §
CAIN MARINE SERVICES, INC., and §
TUBAL-CAIN GAS FREE SERVICES, INC.,§
§
    Defendants. §

## MEMORANDUM AND ORDER

Pending before the court is Defendant Kirby Inland Marine, LP's ("Kirby") Second Motion for Summary Judgment (#27), in which Kirby seeks summary judgment on Plaintiff Mark Hilton's ("Hilton") claim of negligence. Having considered the pending motion, the submissions of the parties, the pleadings, and the applicable law, the court is of the opinion that Kirby's motion should be granted.

I.    <u>Background</u>

In 2014, Hilton was employed by Intertek USA, Inc., as a chemical inspector and, as part of his job, he sampled and gauged cargo from barges and ships. On March 26, 2014, Hilton was called to the Tubal-Cain dock in Port Arthur, Texas, for an inspection. He arrived with a fellow stevedore who entered the deck of Barge 27758 ("the barge") first, without incident. When Hilton stepped down from the dock to the barge, owned by Kirby, he severely twisted and injured his right knee, allegedly due to the deck of the barge being slippery with product or possibly cluttered.

1

On January 22, 2015, Hilton filed his original petition in the 172nd Judicial District Court of Jefferson County, Texas, alleging that his injury was caused by Kirby's negligence. He seeks to recover under Section 905(b) of the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 905(b). On March 5, 2015, Kirby removed the case to federal court. On November 10, 2015, Kirby filed its first motion for summary judgment, which the court granted in part, but denied in part with respect to Kirby's turnover duty, on grounds that Kirby failed to meet its burden under Federal Rule of Civil Procedure 56.[1]

Kirby filed the instant motion for summary judgment on April 20, 2016. In its motion, Kirby argues that it owed only limited duties to Hilton under the LHWCA, and that there is no evidence that it breached its turnover duty, thus precluding Hilton's negligence claim. Hilton contests the motion and urges the court to find that a genuine issue of material fact exists with respect to his claim.

II. Analysis

    A. Summary Judgment Standard

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Davis v. Fort Bend*

---

[1] To the extent this order conflicts with the court's March 24, 2016, order, this order controls.

*Cty.*, 765 F.3d 480, 484 (5th Cir. 2014); *Tech. Automation Servs. Corp. v. Liberty Surplus Ins. Corp.*, 673 F.3d 399, 407 (5th Cir. 2012).

"A fact issue is material if its resolution could affect the outcome of the action." *Hemphill v. State Farm Mut. Auto. Ins. Co.*, 805 F.3d 535, 538 (5th Cir. 2015); *Tiblier v. Dlabal*, 743 F.3d 1004, 1007 (5th Cir. 2014); *accord Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012); *Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 454 (5th Cir. 2005). "Factual disputes that are irrelevant or unnecessary will not be counted." *Tiblier*, 743 F.3d at 1007 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "An issue is '*genuine*' if it is real and substantial, as opposed to merely formal, pretended, or a sham." *Hudspeth v. City of Shreveport*, 270 F. App'x 332, 334 (5th Cir. 2008) (quoting *Bazan ex rel. Bazan v. Hidalgo Cty.*, 246 F.3d 481, 489 (5th Cir. 2001)). Thus, a genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Tiblier*, 743 F.3d at 1007 (quoting *Anderson*, 477 U.S. at 248); *accord Haverda v. Hays Cty.*, 742 F.3d 586, 591 (5th Cir. 2013); *Poole*, 691 F.3d at 627.

Once a proper motion has been made, the nonmoving party may not rest upon mere allegations or denials in the pleadings but must present affirmative evidence, setting forth specific facts, to demonstrate the existence of a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 322 n.3; *see Beard v. Banks*, 548 U.S. 521, 529 (2006) (quoting FED. R. CIV. P. 56(e)); *Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc.*, 738 F.3d 703, 706 (5th Cir. 2013). The court must "review the record 'taken as a whole.'" *Black v. Pan Am. Labs., LLC*, 646 F.3d 254, 273 (5th Cir. 2011) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)

(quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986))); *see City of Alexandria v. Brown*, 740 F.3d 339, 350 (5th Cir. 2014).

All the evidence must be construed in the light most favorable to the nonmoving party, and the court will not weigh the evidence or evaluate its credibility. *Reeves*, 530 U.S. at 150; *Tiblier*, 743 F.3d at 1007; *City of Alexandria*, 740 F.3d at 350. The evidence of the nonmovant is to be believed, with all justifiable inferences drawn and all reasonable doubts resolved in his favor. *Tolan v. Cotton*, ___ U.S. ___, 134 S. Ct. 1861, 1863 (2014) (citing *Anderson*, 477 U.S. at 255); *Hemphill*, 805 F.3d at 538; *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014). The evidence is construed "in favor of the nonmoving party, but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Spring St. Partners-IV, L.P. v. Lam*, 730 F.3d 427, 435 (5th Cir. 2013) (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005)).

Nevertheless, "only reasonable inferences in favor of the nonmoving party can be drawn from the evidence." *Mills v. Warner-Lambert Co.*, 581 F. Supp. 2d 772, 779 (E.D. Tex. 2008) (citing *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 469 n.14 (1992)); *accord Cannata v. Catholic Diocese of Austin*, 700 F.3d 169, 172 (5th Cir. 2012). "If the [nonmoving party's] theory is . . . senseless, no reasonable jury could find in its favor, and summary judgment should be granted." *Stearns Airport Equip. Co., Inc. v. FMC Corp.*, 170 F.3d 518, 528 (5th Cir. 1999) (quoting *Eastman Kodak Co.*, 504 U.S. at 468-69); *accord Shelter Mut. Ins. Co. v. Simmons*, 543 F. Supp. 2d 582, 584-85 (S.D. Miss.), *aff'd*, 293 F. App'x 273 (5th Cir. 2008). "Summary judgment may not be thwarted by conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *Hemphill*, 805 F.3d at 538 (citing *McFaul v.*

*Valenzuela*, 684 F.3d 564, 571 (5th Cir. 2012)); *see Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *accord Stauffer v. Gearhart*, 741 F.3d 574, 581 (5th Cir. 2014); *Firman v. Life Ins. Co. of N. Am.*, 684 F.3d 533, 538 (5th Cir. 2012).

Summary judgment is mandated if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to his case on which he bears the burden of proof at trial. *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp.*, 477 U.S. at 322; *Tiblier*, 743 F.3d at 1007; *Curtis v. Anthony*, 710 F.3d 587, 594 (5th Cir. 2013). In such a situation, "'[a] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial' and 'mandates the entry of summary judgment' for the moving party." *United States ex rel. Farmer v. City of Houston*, 523 F.3d 333, 337 (5th Cir.), *cert. denied*, 555 U.S. 1012 (2008) (quoting *Celotex Corp.*, 477 U.S. at 322-23).

B. <u>Kirby's Motion for Summary Judgment</u>

1. <u>Liability for Negligence Under § 905(b) of the LHWCA</u>

Section 905(b) of the LHWCA provides:

> In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person . . . may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title . . . . The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter.

33 U.S.C. § 905(b). In other words, § 905(b) grants qualified maritime workers an exclusive remedy against a "vessel" for injuries caused by the vessel's negligence. *Id*. The LHWCA defines "vessel" as both the physical vessel on which the worker was injured and the vessel's owner. § 902(21). Here, the parties do not dispute that Hilton qualifies for coverage under the LHWCA or that the barge is a "vessel" within the meaning of the Act. Accordingly, and as

5

previously determined by the court, § 905(b) is the exclusive means by which Hilton may recover against Kirby for the vessel's negligence. *See McLaurin v. Noble Drilling (U.S.), Inc.*, 529 F.3d 285, 289 (5th Cir. 2008) ("If a maritime worker recovers against a vessel under § 905(b), then he may not also sue the vessel in tort."); *Waas v. Kaisha*, No. 08-4334, 2010 WL 1462175, at *4 (E.D. La. Apr. 7, 2010).

In order to recover for a vessel's negligence under § 905(b), the vessel owner must have violated a duty owed to the injured worker. *Lormand v. Superior Oil Co.*, 845 F.2d 536, 541 (5th Cir. 1987), *cert. denied sub nom. Lormand v. Aries Marine Corp.*, 484 U.S. 1031 (1988); *Baham v. Nabors Drilling USA, LP*, 721 F. Supp. 2d 499, 508 (W.D. La. 2010), *aff'd*, 449 F. App'x 334 (5th Cir. 2011). The United States Supreme Court has identified three duties that arise under § 905(b). *Scindia Steam Navigation Co. v. De Los Santos*, 451 U.S. 156, 166-75 (1981); *Kirksey v. Tonghai Mar.*, 535 F.3d 388, 391-92 (5th Cir. 2008); *Burchett v. Cargill, Inc.*, 48 F.3d 173, 178 n.3 (5th Cir. 1995). These are known as: (1) the "turnover duty," under which a vessel owner may be liable if the owner fails to turn over the vessel and its equipment in such a condition that an experienced contractor could safely conduct its operations; (2) the "active control duty," which requires the vessel owner to remedy hazards under the vessel owner's active control; and (3) the "duty to intervene," under which the vessel owner must intervene when it knows that an unreasonably dangerous condition has developed and that the contractor cannot be relied upon to protect its employees. *Kirksey*, 535 F.3d at 391 (citing *Howlett v. Birkdale Shipping Co.*, 512 U.S. 92, 98 (1994)); *Hudson v. Schlumberger Tech. Corp.*, 452 F. App'x 528, 534-35 (5th Cir. 2011). A "basic principle" behind each of these duties is that the independent contractor, rather than the vessel owner, bears the primary responsibility for its employees' safety. *See Scindia*, 451

6

U.S. at 172; *Kirksey*, 535 F.3d at 391 (quoting *Greenwood v. Societe Francaise De*, 111 F.3d 1239, 1245 (5th Cir.), *cert. denied*, 522 U.S. 995 (1997)). The court dismissed Hilton's claims based on Kirby's active control duty and duty to intervene in its March 24, 2016, order. Thus, the sole issue before the court is Kirby's turnover duty.

2. <u>Ordinary Care Turnover Duty</u>

"The turnover duty applies to the shipowner's obligation before or at the commencement of the stevedore's activities." *Kirksey*, 535 F.3d at 392. The turnover duty "places two responsibilities on the vessel owner." *Id.*; *see Dow v. Oldendorff Carriers GMBH & Co.*, 387 F. App'x 504, 506 (5th Cir. 2010). "First, the owner owes a duty to exercise ordinary care under the circumstances to turn over the ship and its equipment in such condition that an expert stevedore can carry on stevedoring operations with reasonable safety." *Kirksey*, 535 F.3d at 392 (citing *Fed. Marine Terminals, Inc. v. Burnside Shipping Co.*, 394 U.S. 404, 416-17, n.18 (1969)); *see Dow*, 387 F. App'x at 506. "Second, the owner owes a duty to warn the stevedore of latent or hidden dangers which are known to the vessel owner or should have been known to it." *Kirksey*, 535 F.3d at 392 (citing *Howlett*, 512 U.S. at 99-100). "Absent actual knowledge of a hazard, then, the duty to warn may attach only if the exercise of reasonable care would place upon the shipowner an obligation to inspect for, or discover, the hazard's existence." *Howlett*, 512 U.S. at 100.

In his petition, Hilton alleges that Kirby failed "to provide a slip free and obstruction free deck on the barge." Hilton also contends that the barge was unseaworthy because the deck was "either slippery with product or other slippery substance, contaminated with obstructions, or some combination of the two." Hilton's assertions effectively plead the first prong of the turnover duty,

7

implicating Kirby's failure to exercise ordinary care to turn over the barge "'in such condition that an expert and experienced stevedoring contractor, mindful of the dangers he should reasonably expect to encounter, . . . will be able by the exercise of ordinary care' to carry on cargo operations 'with reasonable safety to persons and property.'" *Howlett*, 512 U.S. at 98 (citing *Fed. Marine Terminals, Inc.*, 394 U.S. 416-417, n.18).

In its motion, Kirby contends that the ordinary care duty to turn over a safe vessel, encompassed in the turnover duty, does not apply to dangers that are open and obvious. For support, it cites *Kirskey*, in which the United States Court of Appeals for the Fifth Circuit held that the open and obvious exception applies to both aspects of the turnover duty. 535 F.3d at 395. The Fifth Circuit explained: "[I]t makes no sense to say that the vessel is nevertheless liable to the longshoremen for breach of the duty to turnover a safe ship based on an *obvious* defect against which it had no duty to warn." *Id*.

The Fifth Circuit's decision in *Kirksey* expanded the United States Supreme Court's prior holding in *Howlett*, applying the Supreme Court's analysis of the duty to warn to the duty to exercise ordinary care in turning over a safe vessel. In *Howlett*, a longshoreman jumped down onto the deck of a ship and landed on a sheet of plastic that was sticking out from under cargo loaded onto the ship, causing him to fall and injure himself. 512 U.S. at 94. Howlett brought a negligence action against the vessel owner. *Id*. He contended that he did not see the plastic because it was covered with dirt. *Id*. at 95. The Supreme Court held that, in order for the vessel to be liable for Howlett's injury, Howlett needed to prove that the hazard was "neither obvious to nor anticipated by a skilled and competent stevedore at the discharge port." *Id*. at 106. Further, the Court held that the "shipowner has a right to expect 'that the stevedore would perform

with reasonable competence and see to the safety of the cargo operations.'" *Kirksey*, 535 F.3d at 393 (quoting *Howlett*, 512 U.S. at 101). Thus, *Howlett* and *Kirksey* support Kirby's contention that there is no duty to turn over a safe vessel when a hazard is open and obvious because, in those instances, the duty to warn does not apply, and the burden is better placed on the stevedore to take precautions to avoid danger and injury.

District courts within the Fifth Circuit have also recognized *Kirksey*'s extension of *Howlett*. For example, in *Clay v. Daiichi Chhuo Shipping*, the court held that "[a] fair reading of [the *Howlett* opinion] compels the conclusion that the open and obvious defense is applicable to the turnover duty to provide a safe vessel and that a vessel owner has no legal duty to prevent or alleviate an unsafe condition . . . when the condition is open and obvious to longshore workers." 74 F. Supp. 2d 665, 671 (E.D. La. 1999), *aff'd,* 237 F.3d 631 (5th Cir. 2000); *see Kirksey*, 535 F.3d at 395. As the court explained: "While this result seems harsh, it is motivated by the conviction that a contrary result would put all costs on the party who is least able to avoid the accident: the vessel," and it would "remove the incentive to act with caution from the party who is in the best position to avoid accidents: the stevedore." *Clay,* 74 F. Supp. 2d at 671 (citing *Queveda v. Trans-Pac. Shipping, Inc.*, 143 F.3d 1255, 1258 (9th Cir. 1998)). The court therefore concludes that the open and obvious exception applies to Kirby's duty to exercise ordinary care in turning over the barge to Hilton. Accordingly, the court must determine whether the hazard allegedly causing Hilton's injuries was, in fact, open and obvious.

### 3. Open and Obvious Dangers

In the court's prior memorandum and order, the court found that Hilton did not raise a genuine issue of material fact regarding whether Kirby knew or should have known of the slippery

condition, thus precluding Hilton from maintaining a claim for failure to warn. The court, therefore, did not reach the issue of whether Hilton adduced evidence sufficient to support a conclusion that the alleged slippery surface hazard was open and obvious.

Open and obvious dangers are usually evaluated from the standpoint of a reasonable person, or comparably, a "casual observer." *Batts v. Tow-Motor Forklift Co.*, 978 F.2d 1386, 1391 (5th Cir. 1992); *Toney v. Kawasaki Heavy Indus.*, 975 F.2d 162, 166 (5th Cir. 1992) (quoting *Gray v. Manitowoc Co.*, 771 F.2d 866, 870 (5th Cir. 1985)). The standard, however, is slightly different in § 905(b) cases. In *Howlett*, the Supreme Court defined "open and obvious," as it relates to the acts of longshoremen, as "obvious to [or] anticipated by a skilled stevedore in the competent performance of [his] work." 512 U.S. at 106. The *Howlett* definition is applicable in this case.

At deposition, Hilton testified that he has worked as a stevedore for "approximately 25 years" and that he would consider himself "experienced." He further stated that he had been on approximately twenty jobs at the Tubal-Cain dock and had never asked for lights to be turned on when arriving at night with nothing more than a flashlight. Kirby maintains that the deck of the barge is "square, flat, and open" and that the view stepping onto the deck was not compromised by ledges or other obstructions. Hilton, however, testified that it was misty or drizzling on the night of the accident. He stated that he was wearing non-slip boots, as was protocol for his profession. Nonetheless, the court finds that Hilton has failed to raise a genuine issue of material fact with regard to the deck's open and obvious condition. Although Hilton was wearing slip-proof boots, no reasonable jury could conclude that an expert stevedore, mindful of the dangers

he could reasonably expect to encounter, would not expect the deck of a barge to be slippery in misty weather such that he must exercise ordinary care when stepping onto the deck.

At his August 18, 2015, deposition, Hilton initially testified that the bow of the barge was "slippery," but he did not know what made it so. He added, however, "Knowing what I do about barges and ships and stuff, it could be motor oil, it could be transmission fluid, anything from the pump area there." Nevertheless, after acknowledging it was misty and drizzling on the night of his accident, Hilton admitted that he did not know whether the foreign substance on the deck was just water. Kirby asserts in its motion that the "only equipment mounted to the deck of the barge at the bow are two winches" and that "[n]either of these winches [is] capable of leaking oil because they do not use oil in the operation or upkeep." Hilton does not dispute this fact in his response, nor has he adduced any specific evidence that there was any equipment present on the barge that was capable of leaking oil.[2] Thus, Hilton testifies only that there was a slippery substance present on the barge deck that "could be" water, motor oil, or transmission fluid. This testimony is too vague and conclusory to raise a genuine issue of material fact. *See Hemphill*, 805 F.3d at 538. In any event, the court finds that an experienced stevedore—as Hilton holds himself

---

[2] In a subsequent affidavit dated December 29, 2016, Hilton opined definitively that there was either transmission fluid or motor oil on the deck of the barge that caused him to slip. Hilton's affidavit, however, is dated after Kirby's motion for summary judgment was filed. Furthermore, Hilton does not explain, or even acknowledge, the conflict between his newly asserted certainty of the presence of oil or transmission fluid on the deck and his prior vague and speculative declarations about the slippery nature of the deck in his response to Kirby's motion.

It is well settled that the Fifth Circuit "does not allow a party to defeat a motion for summary judgment using an affidavit that impeaches, without explanation, sworn testimony." *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996); *accord Moffett v. Miss. Dep't of Mental Health*, 507 F. App'x 427, 434 (5th Cir. 2013). "Conflicts between deposition testimony and subsequent affidavits or declarations are resolved in favor of the deposition testimony unless the conflict is explained." *Colindres v. Quietflex Mfg.*, 427 F. Supp. 2d 737, 746 (S.D. Tex. 2006). Therefore, the court will exclude Hilton's contradictory affidavit from its consideration, as it is inconsistent with his prior deposition testimony. *See Bouvier v. Northrup Grumman Ship Sys., Inc.*, 350 F. App'x 917, 920 (5th Cir. 2009) (affirming the district court's exclusion of plaintiff's sworn statement, which was inconsistent with her prior deposition testimony); *Pazarin v. Armes*, 512 F. Supp. 2d 861, 870 (W.D. Tex. 2007) (striking plaintiff's affidavit where she provided no explanation for its contradictory statements).

out to be—who acknowledges the possible presence of oily or otherwise slippery surfaces on the deck would have taken reasonable caution to avoid hazards or potential injuries arising from the slippery condition.

Furthermore, although Hilton stated at deposition that the only light available to him was a flashlight, and that he looked at the deck of the barge "as well as [he] could" before stepping onto it, he also testified as to the misty weather and that "there can be oily film on barges that you don't visually see." Accordingly, the court concludes that Hilton—as an expert stevedore, mindful of the potential dangers he could reasonably encounter—was required to take his own precautions to avoid danger or injury when boarding the barge to complete his cargo inspection. Such precautions could have included securing more adequate lighting or exercising greater care in stepping onto the deck, as he counseled his coworker to do. As such, because any condition of the barge deck was open and obvious, Kirby did not breach its turnover duty to Hilton.

III. Conclusion

Consistent with the foregoing analysis, Kirby's Second Motion for Summary Judgment is GRANTED. The open and obvious exception to Kirby's duty to turnover a reasonably safe vessel precludes Hilton from asserting a § 905(b) claim against Kirby. There remain no material facts in dispute, and Kirby is entitled to judgment as a matter of law with respect to Hilton's § 905(b) claims.

SIGNED at Beaumont, Texas, this 6th day of June, 2016.

*Marcia A. Crone*
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE